# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 2, 2016

## PATRICIA SUE KUHLO v. ERNEST CHARLES KUHLO

**Appeal from the Chancery Court for Williamson County**
**No. 41321      Joseph A. Woodruff, Judge**

_____

**No. M2015-02155-COA-R3-CV – Filed June 23, 2016**

_____

In this divorce action, Husband contends the trial court erred by denying his request for "assistance of an attorney," in valuing his minority partnership interest in a real estate venture, in the division of the marital estate, by ordering the sale of real estate without assuring the sale would be for fair market value, by awarding Wife transitional alimony, and by awarding Wife her attorney's fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and KENNY W. ARMSTRONG, JJ., joined.

Deana Hood, Franklin, Tennessee, for the appellant, Ernest Charles Kuhlo.

Joanie Lucie Abernathy, Franklin, Tennessee, for the appellee, Patricia Sue Kuhlo.

## OPINION

Patricia Sue Kuhlo ("Wife") initiated this matter by filing a Complaint for Divorce in the Williamson County Chancery Court on August 27, 2012, seeking a division of property and spousal support. Ernest Charles Kuhlo ("Husband") filed an answer asserting that Wife is not entitled to any spousal support because she is capable of working and he is disabled.

Initially both parties were represented by counsel, during which time the parties engaged in discovery and attempted mediation but were unsuccessful. More than two years later, an Agreed Order was entered setting the case for trial on August 11, 2015. Soon thereafter, Husband's counsel filed a motion for leave to withdraw because he was moving out of state. On June 8, 2015, the trial court entered an order allowing Husband's counsel to withdraw while expressly stating that the case would not be continued as a

result of the withdrawal. At the time of this hearing, Husband informed the court that he would represent himself at trial; however, when the case came on for trial on August 11, 2015, Husband requested the court provide to him "the assistance of an attorney," stating that he was "way over [his] head." The trial court denied the request and the trial proceeded.

The evidence introduced at trial established that the parties had been married for forty-one years, since 1974, that Wife and Husband were 64 and 68 years old, respectively, and their children were adults. The evidence also showed that Wife has a Bachelor of Arts degree in psychology and a master's degree in social work, and that Husband attended dental school and, after graduating, served two years in the U.S. Navy as a dentist. During a tour of duty, Husband sustained a service-connected injury that ultimately resulted in a military disability rating. Following his service, Husband enrolled in school to obtain an additional degree in orthodontics while Wife was employed as a social worker. Upon Husband's graduation from orthodontic school, the couple moved to Middle Tennessee and Husband established an orthodontic practice. In 1978, Wife took a course in accounting and began keeping the books for Husband's orthodontic practice. For her bookkeeping services, Wife was paid a modest salary that was placed into her individual retirement account.

The evidence at trial showed that, due to his disabilities, Husband began receiving benefits from his private disability insurance policy in 2000 and retired his orthodontic practice shortly thereafter. Since that time, Husband has focused his activities on investing in income producing real estate. At the time of the divorce, Husband and Wife owned several pieces of commercial property from which they were receiving $13,500 per month in rent.[1] Further, the parties owned residential property on Liberty Pike in Franklin, Tennessee, that had served as the marital home for four years prior to the parties' separation on July 25, 2012, at which time Wife purchased a separate residence on Stewart Campbell Pointe in Spring Hill, Tennessee, where she has resided ever since. Although the parties agreed that the Wife's separate residence on Stewart Campbell Pointe had a net value of approximately $330,000 at the time of trial, the parties disagreed on the value of the Liberty Pike residence. Wife insisted the property had a gross value of $2,000,000 while Husband introduced an appraisal of $1,670,000.[2]

---

[1] All of the rental property was listed for sale (by agreement of the parties) at the time of the divorce and it was agreed they would each receive one-half of the net proceeds. Wife testified that she had been collecting the rents and keeping the books for the parties' rental properties and wanted to continue doing so until the properties were sold.

[2] Additionally, the evidence showed that the property was encumbered by a mortgage balance of $1,423,930 at the time of trial. The property was also the subject of two lawsuits pending between the parties and the City of Franklin concerning the home on Liberty Pike, which concerned a cell tower, an infringement across the City's property line, and damage to a water tank.

Further, in addition to other miscellaneous assets including life insurance policies, bank accounts and retirement accounts owned by the parties, the parties presented evidence regarding Husband's ownership of a partnership interest in a general partnership known as Leeville Pike Land Partners.[3] Although Husband claimed his partnership interest had no value, Wife claimed the interest was worth $250,000. Despite their conflicting valuations, the parties testified at trial that they were willing to divide this asset equally.

Except for buying, trading, selling, and managing their rental properties, neither spouse was gainfully employed at the time of trial. Wife testified that she had no income other than her share of the rental income, which was one-half of the $13,500 monthly rental income. She also stated that she had incurred attorney's fees in the total sum of $23,599 during the divorce proceedings and she had no available funds to pay these fees.

Husband acknowledged that he received one-half of the $13,500 monthly rental income and stated that he additionally received monthly benefits under his policy for professional disability and VA disability benefits. He stated that he was not in good health and he went to the emergency room for cardiac problems six to eight times in 2015. Husband also stated that he had incurred $8,000 in attorney's fees and was unable to pay Wife spousal support or her attorney's fees.

At the conclusion of the trial on August 12, the court ordered the parties to supplement the record with evidence regarding the degree to which certain marital assets were pledged as collateral, and to advise the court whether real estate agent Thomas Magli was available to serve as a special master for the purpose of assisting the parties in the marketing and sale of their commercial real estate, which the parties had already listed for sale or agreed to sell.[4] The record was partially supplemented on August 21, 2015, and on August 27, 2015, the court ordered the parties to further supplement the record no later than September 18, 2015, regarding Husband's partnership interest in Leeville Pike Land Partners. On September 18, 2015, Wife filed the partnership's federal income tax Schedule K-1 for tax years for 2010 to 2014, which supported her claim that Husband's partnership interest was worth $250,000. Thereafter, Husband filed a handwritten, unsworn statement disagreeing with Wife's supplemental filing in which he stated that he had "contacted" an "appraiser out of Mt. Juliet, TN for their opinion," and this appraiser believed the value of the partnership interest was between $5,000 and $10,000; however, Husband did not provide a written report or any competent evidence to support this filing.

---

[3] The parties identify the partnership by three similar yet different names in their briefs. Leeville Pike Land Partners is the name used by the trial court.

[4] Both parties informed the court that they approved of Mr. Magli serving as special master. The question remaining was whether Mr. Magli would agree to serve.

Thereafter, the trial court entered its final order, in which it made the following findings of fact:

> Wife is presently 64 years of age . . . . Husband is 68. The Parties were married on December 14, 1974 in Morristown, Tennessee. At the time of the marriage, Wife was employed by the State of Tennessee Department of Probation and Parole. Husband was attending dental school on a scholarship provided by the US Navy.

> Following Husband's graduation from dental school, Husband entered upon active duty in the Navy and the Parties moved from Tennessee to the Republic of the Philippines for Husband to perform a tour of duty with the Navy. While serving on active duty, Husband sustained a service-connected injury that ultimately resulted in a military disability rating.

> Upon their return to the United States and Husband's discharge from the Navy, Husband enrolled in orthodontic school and Wife worked full-time to support the family. Upon Husband's graduation from orthodontic school, the couple moved to Middle Tennessee and Husband established an orthodontic practice. Although Wife had obtained a [bachelor of arts] degree in psychology and a Master's degree in Social Work, Husband requested, and Wife agreed, to leave the counseling field and work with Husband as his office manager and dental assistant. In order to prepare herself for this work, Wife undertook additional undergraduate education in accounting while Husband was completing his training in orthodontics. Thereafter, Wife worked in Husband's orthodontics practice doing bookkeeping and other necessary administrative functions while also being responsible for domestic responsibilities at home. These domestic responsibilities includ[ed] a majority share of the parenting responsibilities required to raise the Parties' two adopted children.

> During the course of the marriage, Husband has gone on periodic compulsive spending binges that resulted in the wasting of marital assets. He has also been verbally and emotionally controlling towards wife. . . . Husband's financial irresponsibility has included purchasing very expensive items of art and other decorative objects on credit and without prior discussion with Wife. In 2004, Husband purchased several paintings for approximately $30,000 with a credit card he obtained without Wife's consent, but in her name.

> Husband's disability from the Navy, as well has his mental health issues, ultimately resulted in him being unable to continue practice as an

- 4 -

orthodontist. Therefore, Husband turned his business energies towards accumulating income producing commercial real estate.

. . .

Wife testified that she does intend to pursue some sort of gainful employment post-divorce, however, it is impractical for her to pursue the additional training, supervision and licensure necessary for her to return to the field of clinical social work. During the marriage, Wife devoted her employment energies to supporting Husband's orthodontic practice as well as commercial real estate investment activities. She is willing to continue to work in her current capacity with respect to the Parties' real estate investments for so long as it takes for those assets to be liquidated . . . . In 2000, Husband was determined to be disabled from practicing orthodontics. He also has a permanent service-connected disability rating of 30% from the Department of Veterans Affairs. Husband is not likely to be able to pursue gainful employment post-divorce; however, Husband remains a shrewd and resourceful businessman and investor.

Over the years, the Parties have purchased real estate assets in tax-free like-kind exchanges pursuant to § 1031 of the Internal Revenue Code. Wife testified that she is willing to recognize capital gains on the sale of her share of these assets. Husband is less willing to recognize capital gains, however, Husband has the business acumen necessary to devise and pursue lawful strategies calculated to avoid federal capital gains taxes.

Based on the above, along with other findings and conclusions of law, the court made the following rulings that are pertinent to the issues on appeal. The court granted Wife the divorce based on Husband's inappropriate marital conduct and found that the parties were in substantial agreement concerning their marital and separate property, with the exception of two matters that are not at issue in this appeal.[5] The court ruled that the

---

[5] One matter involved the classification of two bank accounts at First Tennessee Bank. Both accounts were titled in Wife's name and Wife testified that the funds in these two accounts represent her distributive inheritance share of the proceeds from the sale of her mother's residence. Husband claimed that the funds in the account represented an effort by Wife's mother to dispose of assets in order to become eligible for government benefits. The court ruled that "[e]ven if Husband's claim were true, this would not change the character of the assets as being -property acquired by [Wife] at any time by gift, bequest, devise of descent." Therefore, the court ruled that these two accounts were Wife's separate property. The other matter in dispute concerned two whole life insurance policies issued by State Farm; one with a $10,000 death benefit, the other with a $20,000 death benefit. The cash value of the first policy is $6,445 and the cash value of the second policy is $11,495. The trial court found the evidence supported the finding that they were acquired during the marriage and are therefore, marital property. Accordingly,

(continued…)

- 5 -

remainder of the assets were marital property subject to equitable division. After identifying the statutory factors to be considered in determining the equitable division of the marital estate, the court awarded the following property solely to Husband:

| | Description | Gross Value | Net Value |
|---|---|---|---|
| (i) | 1296 Liberty Pike | $1,835,000 | $413,000 |
| (ii) | Franklin Synergy Bank CD #---85 | | $93,792 |
| (iii) | Merrill Lynch IRA, -----15244 | | $235,167 |
| (iv) | Fidelity IRA, -----24523 | | $417.00 |
| (v) | 2006 Honda Odyssey EX-1 | | $0 |
| (vi) | Three Wyndham Time Shares | | $42,000 |
| (vii) | 510 S. E. Broad St., Murfreesboro | | $135,350 |
| (viii) | Leeville Pike Land Partners | | $250,000 |

The court awarded the following property solely to Wife:

| | Description | Gross Value | Net Value |
|---|---|---|---|
| (i) | 2892 Stewart Campbell Pointe | $345,000 | $330,000 |
| (ii) | Regions Bank Acct. ---744 | | $5,744 |
| (iii) | Fifth Third Bank Acct. ----495 | | $92,019.38 |
| (iv) | Franklin Synergy Bank CD #--488 | | $128,847 |
| (v) | Wells Fargo IRA, -----4517 | | $182,904 |
| (vi) | 2014 Honda CRV | | $0 |
| (vii) | State Farm (Whole Life) | $100,000 | $51,513 |
| (viii) | 510 S. E. Broad St., Murfreesboro, TN | | $135,350 |

As can be seen above, in dividing the marital assets, the court awarded the interest in Leeville Pike Land Partners solely to Husband, despite the fact that the parties announced at trial that they would agree to split this partnership interest. The trial court explained its rationale for doing so as follows:

> Husband holds an 11.3% partnership interest in Leeville Pike Land Partners which he testified has no value. Wife estimates that the value of the partnership interest is $250,000. The Parties testified at trial that they were willing to divide this asset equally so that they each had a 5.65% partnership interest. Neither Party introduced the partnership agreement into evidence. Therefore, the Court cannot determine whether the

the court ordered that the policies be surrendered, and the net cash surrender proceeds be divided equally between the parties.

partnership interest is transferrable, whether a partner is subject to involuntary capital calls by the partnership, whether the entity provides for limited or general liability of the partners for partnership debts, or any other attributes of interest in the partnership. Accordingly, the Court declines to divide this asset. . . .

As for the parties' commercial real estate, the court awarded it "in equal shares to be divided between them after marketing and sale." To accomplish the marketing and sale of these assets, the court ordered:

> The Parties shall undertake commercially reasonable efforts to market and sell the foregoing real estate assets (the "Assets") and shall utilize the services of Mr. Tom Magli, who is hereby appointed a Special Master pursuant to Rule 53, Tenn. R. Civ. P. for the purposes of advising the Parties regarding the marketing and sale of the Assets. In the event that the Parties cannot agree on (a) the asking price for any particular Asset; (b) whether to accept an offer to purchase any particular Asset; or (c) whether and in what amount to make a counter-offer for the sale of a particular Asset; Mr. Magli shall have the authority to determine the question for the Parties who shall be bound by Mr. Magli's determination. Mr. Magli shall be entitled to reasonable compensation for his services to be paid by the Parties jointly and severally.

> Pending the sale of the Assets, the Parties shall maintain all other joint deposit accounts open for the purposes of receiving rental income and paying reasonable and necessary expenses associated with the Assets. Wife shall continue to function in her current capacity as the person who deals with the tenants, collects the rents and approves the payment of expenses. Upon the sale of the last of the Assets, the net proceeds thereof, together with the net collectable balance in these deposit accounts will be divided by the Parties in two equal shares.

> The Assets are encumbered by a secured credit facility. Having considered the factors for allocating marital debt set out in *Alford v Alford*, 120 S.W.3d 810 (Tenn. 2003), the court concludes that the purpose of this credit facility was acquisition of assets that benefitted both Parties equally and both Parties are equally able to repay any deficiency following the sale of the assets. This credit facility shall be paid from the proceeds of sale of the Assets prior to distribution of the net proceeds to the Parties. In the event that the proceeds of sale are insufficient to satisfy the secured indebtedness, the Parties shall be liable jointly and severally, with the right of contribution for the debt. The Assets also generate income. Pending the sale of the Assets, the net operating income generated by the Assets shall be

determined on a monthly basis and divided by the Parties in two shares with Wife receiving a 60% share and Husband receiving a 40% share. This share allocation is equitable inasmuch as 1296 Liberty Pike, awarded to Husband, is also an income producing asset to which income Husband shall be entitled to 100%.[6]

As for spousal support, the court stated that the extra twenty percent Wife would receive from the rental properties, that being the 60/40 percent division of net rental income in favor of Wife pending the sale of the rental properties, "is made as an award of transitional alimony." The court also granted Wife's request to recover her attorney's fees incurred in the trial court proceedings in the amount of $23,599.

The final judgment was entered on September 22, 2015. Thereafter, Husband obtained new counsel and timely filed a notice of appeal. In this appeal, Husband contends the trial court erred: (1) in not allowing Husband the assistance of counsel at trial; (2) in ordering the sale of the parties' commercial properties without insuring that the sales would be for fair market value; (3) in the valuation of the Leeville Pike Partnership Interest and in awarding it solely to Husband when the parties agreed it should be equally divided; (4) in awarding Wife transitional alimony; and (5) in awarding Wife her attorney's fees. Wife's only issue on appeal is that she seeks to recover the attorney's fees she incurs in this appeal.

## ANALYSIS

### I. ASSISTANCE OF COUNSEL

Husband contends the trial court erred in not providing him with the assistance of counsel at trial. For the following reasons, we find no error with the trial court's decision.

With the exception of proceedings involving the termination of parental rights, there is no absolute right to counsel in a civil case. *Bell v. Todd*, 206 S.W.3d 86, 92 (Tenn. Ct. App. 2005); *Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 953 (Tenn. Ct. App. 1989). Unlike indigent criminal defendants, indigent civil litigants have neither the constitutional nor the statutory right to appointed counsel. *Hessmer v. Miranda*, 138 S.W.3d 241, 245 (Tenn. Ct. App. 2003). Moreover, even if such a right did exist, Husband was not indigent. At the time of trial, he and Wife jointly owned assets with a

---

[6] The trial court also ruled that Husband would be solely liable for two unsecured debts: one, in the principal amount of $23,960 owed to Bank of America; and the other in the principal amount of $4,786 owed to Wells Fargo Credit Card. The court justified this by noting "[i]n recognition of the award to Husband of the entire marital partnership interest in Leeville Pike Land Partners, Husband shall be solely responsible for the satisfaction of these two unsecured debts and shall indemnify and hold Wife harmless from same."

gross value in excess of three million dollars and they received monthly rental income of $13,500, in addition to Husband's disability benefits and veteran's benefits. Therefore, Husband would not have been eligible for appointed counsel even if this had been a case in which there was an absolute right to counsel for indigent litigants.

We also find Husband's request for court appointed assistance of counsel unavailing for another reason. Contemporaneous with Husband's request for assistance of counsel in this action, Husband was being represented by counsel in two separate lawsuits involving the Liberty Pike property, which he was awarded in the divorce free and clear from any claims by Wife. Thus, Husband had every opportunity before the day of trial to hire counsel.

For these reasons, we find no error with the trial court's decision denying Husband's request for assistance of counsel.

## II. SALE OF THE COMMERCIAL PROPERTY

Husband contends the trial court erred in appointing Thomas Magli as a Tenn. R. Civ. P. 53 Special Master with authority to decide the price for which to sell the parties' commercial real property, without ensuring that each sale is for fair market value. In making this argument, Husband relies on Tenn. Code Ann. § 36-4-121(a)(3) and our decisions in *Doran v. Doran*, No. W2003-00170-COA-R3-CV, 2004 WL 86174 (Tenn. Ct. App., Jan. 12, 2004), and *Granoff v. Granoff*, No. E2013-02598-COA-R3-CV, 2014 WL 4792652 (Tenn. Ct. App., Sep. 26, 2014).

Pursuant to Tenn. Code Ann. § 36-4-121(a)(3), a court, in its discretion, may impose conditions or procedures "upon the sale of property in divorce cases as are reasonably designed to ensure that such property is sold for its fair market value." Tenn. Code Ann. § 36-4-121(a)(3)(D). We have considered the scope of this provision on several occasions. For example, in *Doran v. Doran*, we held that the trial court erred in ordering the sale of four parcels of marital real property through a method whereby each party submitted sealed bids to purchase the other's interest in the property and the party with the winning bid would be awarded outright ownership of that parcel. *Doran*, 2004 WL 86174, at *7-8. We reasoned that although the trial court was "well within its authority, as granted by Tenn. Code Ann. § 36-4-121, to order a private sale," the trial court failed to comply with the statute because it failed to "ensure that such [marital] property is sold for its fair market value." *Granoff*, 2014 WL 4792652, at *14 (quoting *Doran*, 2004 WL 86174, at *2-3).

However, in *Granoff v. Granoff*, the trial court entered an order which memorialized the parties' agreement that the wife would have the right to "list, market, show, and sell" the marital residence. *Id.* at *1. After the wife negotiated a purchase price with a prospective buyer, the husband challenged the sale and argued that the trial court

failed to protect the value of the property when it authorized the wife to execute the sale without imposing further conditions to ensure that she would obtain fair market value for the property. *Id.* at *14. On appeal, we affirmed the trial court's approval of the sale of the property. *Id.* In so doing, we distinguished the facts from *Doran*, and held that the trial court did not violate Tenn. Code Ann. § 36-4-121(a)(3) by vesting sole authority to convey the marital property with the wife. *Id.*

In this case, we do not believe that the trial court has violated the requirements of Tenn. Code Ann. § 36-4-121(a)(3). Unlike the order in *Doran*, which required the parties to submit blind bids to purchase the property without regard to the fair market value, the trial court's order in this case contains provisions which ensure that the property will be sold at a fair value. Specifically, the order requires the parties to "undertake *commercially reasonable* efforts to market and sell" the property and appoints Mr. Magli, an experienced real estate professional, as a Special Master "for the purposes of advising the Parties regarding the marketing and sale of [the property]." Further, contrary to Husband's contention, the order did not grant Mr. Magli "unfettered discretion" to market or sell the property for the parties; instead, the order indicated that Mr. Magli should only undertake these duties "[i]n the event that the Parties cannot agree[.]"

Additionally, the record indicates that it was Husband who recommended Mr. Magli to serve as the Special Master. Specifically, when Wife expressed concern that Husband may not agree with her on the ultimate sale prices, Husband testified that he did not have any concerns about being able to reach an agreement on the selling price. Nevertheless, when it was suggested that the court appoint a third party to break any stalemates on the sales prices, Husband recommended Thomas Magli, stating that Mr. Magli would be the best choice because he was a real estate person who could help the parties get the best possible value price. When Wife agreed to Mr. Magli serving in the role as the facilitator and tiebreaker, the trial court asked Husband, "So Dr. Kuhlo, you would be okay with Tom Magli serving in that capacity; is that right?" Husband responded: "That's correct."

Moreover, at no time during the trial court proceedings did Husband object to Mr. Magli serving in this capacity or request any additional conditions or procedures be imposed to assure that the properties sold for fair market value. It is well settled that an issue cannot be raised for the first time on appeal. *Stewart Title Guar. Co. v. F.D.I.C.*, 936 S.W.2d 266, 270-271 (Tenn. Ct. App. 1996); *Irvin v. Binkley*, 577 S.W.2d 677, 679 (Tenn. Ct. App. 1978). Thus, Husband waived this issue by not bringing it to the attention of the trial court.

For the foregoing reasons, we find no error with the trial court's appointment of Mr. Magli or with the conditions and procedures set by the court to sell the properties.

### III. LEEVILLE PIKE LAND PARTNERS

Husband contends the trial court erred in the valuation of his partnership interest in Leesville Pike Land Partners and by awarding the interest solely to Husband when the parties agreed it should be equally divided.

We shall first consider whether the court erred in awarding the partnership interest to Husband. As Husband correctly states, the parties announced at trial that the court could award one half of that asset to each spouse; however, Husband fails to acknowledge that when the parties made the announcement, the court made several inquiries about the terms of the partnership agreement. Specifically, the trial court inquired as to whether the interest could be assigned and whether the partners were subject to mandatory capital calls. In response to these questions, Husband stated that he had no idea whether the partnership could make mandatory capital calls and claimed that his partners had orally agreed to a transfer of his interest; however, Husband provided no documentation of such approval. At the end of the trial, Husband agreed to supplement the record by filing a copy of the partnership agreement but failed to do so. As a result, on August 27, 2015, the court ordered the parties to further supplement the record no later than September 18, 2015, regarding, *inter alia*, Husband's partnership interest in Leesville Pike Land Partners. On September 18, 2015, Wife filed the partnership's federal income tax Schedule K-1 for tax years for 2010 to 2014; however, Husband never filed the partnership agreement. Instead, Husband filed a handwritten, unsworn statement disagreeing with Wife's supplemental filing and further stated that he had "contacted" an "appraiser out of Mt. Juliet, TN for their opinion," that it was the appraiser's opinion that the value of the partnership interest was between $5,000 and $10,000, and concluded by stating he was "awaiting report."

In its final order, the trial court awarded Husband's partnership interest to Husband instead of to the parties equally as was contemplated. The court explained its decision to award the asset solely to Husband and its valuation of the asset as follows:

> Husband holds an 11.3% partnership interest in Leeville Pike Land Partners which he testified has no value. Wife estimates that the value of the partnership interest is $250,000. The Parties testified at trial that they were willing to divide this asset equally so that they each had a 5.65% partnership interest. Neither Party introduced the partnership agreement into evidence. Therefore, the Court cannot determine whether the partnership interest is transferrable, whether a partner is subject to involuntary capital calls by the partnership, whether the entity provides for limited or general liability of the partners for partnership debts, or any other attributes of interest in the partnership. Accordingly, the Court declines to divide this asset. Although the Parties have a divergent opinion of the value of the asset, the Court has reviewed the schedule K-I forms issued by the

partnership for federal income tax years 2010 - 2014 inclusive. These documents corroborate Wife's estimate of value and therefore the Court credits Wife's estimate. In order to equitably adjust for the award of this asset to Husband, the Court will allocate to Husband the responsibility to indemnify and hold Wife harmless from certain joint debts as set out infra.

We find no error with the trial court's reasoning because Husband failed to provide the partnership agreement; thus, the court could not determine whether the partnership interest was transferrable, or what risks or liabilities are attached to the interest. Accordingly, we find no error with the trial court's decision to award this marital asset to Husband instead of dividing the asset between the spouses.

We shall now consider whether the trial court erred in the valuation of the partnership interest. The valuation of a marital asset is a question of fact. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). It is determined by considering all relevant evidence, and each party bears the burden of bringing forth competent evidence. *Id.* (citing *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987)) (stating the parties themselves must come forward with competent valuation evidence). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented by all the relevant valuation evidence. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997); *Brock v. Brock*, 941 S.W.2d 896, 902 (Tenn. Ct. App. 1996).

On appeal, we presume the trial judge's factual determinations are correct unless the evidence preponderates against them. *Kinard*, 986 S.W.2d at 231 (citing *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996)). Accordingly, such decisions will not be second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Smith v. Smith*, 93 S.W.3d 871, 875 (Tenn. Ct. App. 2002); *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995).

We find it more than suspicious that Husband, as a partner, had access to the partnership agreement and financial records yet failed to provide any documentation regarding the partnership after telling the court he would. The only competent evidence Husband introduced was his unsubstantiated opinion testimony that his interest was "of no value." The other evidence Husband attempted to provide was his post-trial unsworn, handwritten statement disagreeing with Wife's supplemental filing in which he stated that he had "contacted" an "appraiser out of Mt. Juliet, TN for their opinion," and that it was the appraiser's opinion that the value of this asset was between $5,000 and $10,000. Conversely, Wife filed schedule K-1 forms issued by the partnership for federal income tax years 2010 – 2014, which corroborated Wife's position that the value of Husband's partnership interest was $250,000.

The trial court found unpersuasive Husband's testimony that his partnership interest was of no value; conversely, the court found the partnership's K-1 schedules for tax years 2010 – 2014 probative and persuasive and the evidence does not preponderate against this finding. Moreover, the court's determination that Husband's partnership interest was worth $250,000 was within the range of evidence presented. *See Watters*, 959 S.W.2d at 589; *see also Brock*, 941 S.W.2d at 902. Thus, we find no error with the trial court's determination that Husband's partnership interest was worth $250,000.

## IV. TRANSITIONAL ALIMONY

Husband contends the trial court erred in awarding Wife transitional alimony or, for that matter, any alimony.

Transitional alimony is appropriate when a court finds that rehabilitation is not necessary but the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 109 (Tenn. 2011) (citing Tenn. Code Ann. §§ 36-5-121(d)(4) & (g)(1); *Riggs v. Riggs*, 250 S.W.3d 453, 456 n.5 (Tenn. Ct. App. 2007)). Transitional alimony "aid[s] the person in the transition to the status of a single person." *Id*. "[T]ransitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id*. As such, transitional alimony is a form of short-term support.[7]

The relevant portions of the court's order granting transitional alimony read as follows:

Pending the sale of the [rental properties], the net operating income generated by the [rental properties] shall be determined on a monthly basis and divided by the Parties in two shares with Wife receiving a 60% share and Husband receiving a 40% share. This share allocation is equitable inasmuch as 1296 Liberty Pike, awarded to Husband, is also an income producing asset to which income Husband shall be entitled to 100%.

. . . .

---

[7] Transitional alimony is payable for a definite period of time and may be modified only upon certain circumstances: (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree; or (3) the recipient spouse resides with a third person following the divorce. *Gonsewski*, 350 S.W.3d at 109; Tenn. Code Ann. § 36-5-121(g)(2). By statute, the court may also "provide, at the time of entry of the order to pay transitional alimony, that the transitional alimony shall terminate upon the occurrence of other conditions, including, but not limited to, the remarriage of the party receiving transitional alimony." Tenn. Code Ann. § 36-5-121(g)(4).

The 60/40 per cent division of net rental income in favor of Wife provided for above is made as an award of transitional alimony.

Husband contends the award was "unnecessary, unfair and an abuse of the trial court's discretion." More specifically, he contends the error lies in the trial court's "assumption" the Liberty Pike property produces income. As he puts it, this assumption is totally unsupported by evidence of any sum that Liberty Pike produces in rental income. We find Husband's argument somewhat disingenuous in that, while there is no evidence of the specific sums that Husband received for renting, or as he called it "cost sharing," the Liberty Pike property, Wife testified that "at least seven to ten different families" lived there in the three years preceding the trial who paid Husband for the right to occupy the premises. As she explained it, Husband allowed others to rent or "cost share" in the Liberty Pike property because he was living in Florida or Hawaii seven months a year. Thus, there is evidence the property was income producing, although the amount of income Husband derived from the property remains uncertain. Nevertheless, the income had to be more than insignificant because the property, which was valued at $1,835,000, was encumbered by a mortgage with a balance owing in excess of $1.4 million. Taking Husband's declared income and expenses into account the only rational reason for retaining this property is if it produces income. The property was awarded solely to Husband; thus, it is within Husband's sole discretion to rent or sell it and either decision will provide funds to Husband for his sole use and benefit.

It is also relevant that prior to the award of transitional alimony, each spouse was receiving 50% of the net rental income; thus, although the trial court awarded Wife twenty percent of the net income from the parties' rental properties as transitional alimony, this amount represents only a ten percent increase over what Wife had previously been receiving from the rental properties.[8] At the time of trial, the gross rental income was $13,500 per month, ten percent of which is $1,350 per month. However, Wife's transitional alimony was based on the net income, not gross. Moreover, because the rental properties were for sale by court order, Wife's transitional alimony would diminish as each property was sold and would terminate when the last property was sold.

Furthermore, when we consider Husband's general contention that the award is unnecessary and unfair, we believe it significant that a condition for Wife receiving the transitional alimony is that Wife had to work to receive the extra ten percent by providing

---

[8] With the award of transitional alimony, Wife would receive 60% and Husband 40% of the rental income pending the sale of the rental properties. Upon the sale of all of the rental properties, each spouse would receive 50% of the net proceeds from the sale.

bookkeeping services (as she has done for years) pending the sale of the properties.[9] Her bookkeeping services benefit Husband because, without Wife performing these functions, Husband would have to perform these tasks himself or hire a third party to do so. Thus, we find no basis for concluding that the award is unnecessary or unfair.

As for Husband's contention that the award constitutes an abuse of discretion, trial courts are afforded wide discretion in determining whether there is a need for spousal support, and if so, the nature, amount, and duration of the award. *Gonsewski*, 350 S.W.3d at 105 (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). Absent an abuse of discretion, a trial court's decision to award spousal support will not be disturbed on appeal. *Id.* The abuse of discretion standard of review envisions "a less rigorous review" of a trial court's decision and "a decreased likelihood that the decision will be reversed on appeal." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). "It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Id.* Thus, the appellate courts may not second-guess the trial court or substitute their discretion for that of the trial court. *Id.*

The office of transitional alimony, which is a form of short term alimony, is to aid the economically disadvantaged spouse who needs financial assistance in adjusting to the economic consequences of the divorce. *See Gonsewski*, 350 S.W.3d at 109. Because Wife needs temporary financial assistance in adjusting to the economic consequences of the divorce, we find no abuse of discretion with the trial court's decision to award Wife transitional alimony in the amount and for the duration stated. Accordingly, we affirm.

V. ATTORNEY'S FEES INCURRED AT TRIAL

Husband contends the trial court erred in awarding Wife attorney's fees in the total amount of $23,599.

An award of attorney's fees in a divorce action constitutes alimony in solido. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). When determining whether to award alimony and the "nature, amount, length, and manner of payments," courts are required to consider the factors set forth in Tennessee Code Annotated § 36-5-121(i).[10]

---

[9] It is most unusual for an award of alimony to be tied to a commitment by the recipient spouse to render a service that benefits the obligor spouse. Neither party takes issue with this circumstance; accordingly, we reserve judgment on the matter.

[10] These factors include, but are not limited to, the relative earning capacity; obligations, needs, and financial resources of each party; the relative education and training of each party; duration of the marriage; the age, mental condition and physical condition of each party; the separate assets of each party; provisions made with regard to the marital property; the standard of living of the parties established during the marriage; the extent to which each party has made such tangible and intangible contributions to

(continued…)

*Gonsewski*, 350 S.W.3d at 109-110. However, the two most important factors to consider are the disadvantaged spouse's need and the other spouse's ability to pay. *Id.* (citing *Riggs*, 250 S.W.3d at 457; *Bratton*, 136 S.W.3d at 605; *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002); *Burlew*, 40 S.W.3d at 470). Such an award is appropriate when the disadvantaged spouse's income is not sufficient to pay attorney's fees and the divorce fails to provide a revenue source, such as from the property division, or assets from which to pay attorney's fees. *Id.*; *see also Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001); *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992). Further, an award is appropriate when the spouse seeking attorney's fees lacks sufficient funds to afford his or her own legal expenses, *Houghland*, 844 S.W.2d at 623, or would have to deplete his or her resources in order to pay them, *Fickle v. Fickle*, 287 S.W.3d 723, 737 (Tenn. Ct. App. 2008) (citing *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980)).

An award of attorney fees is considered to be within the sound discretion of the trial court, and will not be reversed on appeal if that discretion is not abused. *Yount*, 91 S.W.3d at 783 (citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744 (Tenn. Ct. App. 1996).

The facts here are not dissimilar from those in *Yount v. Yount*. In that case, we affirmed the trial court's award of attorney's fees to the economically disadvantaged wife because, among other reasons, there was no award of alimony in solido to the wife, and the husband had disposed of most of the marital property prior to the divorce. *See Yount*, 91 S.W.3d at 783. Similarly, in this case the trial court did not award alimony in solido and, while Husband did not dispose of "most of the marital property," the court found that he dissipated over $700,000 of marital assets in recent years. Further, as was the case in *Yount*, Husband has the skills to produce considerable income when he is sufficiently motivated. *See id.* Specifically, the trial court found "Husband remains a shrewd and resourceful businessman and investor." Thus, although Husband is not able to practice orthodontics or obtain gainful employment, he still possesses the ability to produce considerable income.

Conversely, Wife has not worked in the private sector in decades; thus, her transition to gainful employment remains uncertain. Moreover, although Wife should receive cash proceeds from the sale of the rental property, she will not receive any of the proceeds until all debts associated with the properties are satisfied and all costs associated with the court ordered sale have been paid. When this occurs and how much she may receive is uncertain. Further, although Wife received $53,000 in cash in the division of the marital assets, these funds are needed for Wife's support and maintenance in the foreseeable future. Therefore, unless Husband pays her attorney's fees, Wife would likely

the marriage; the relative fault of the parties; and such other factors as are necessary to consider the equities between the parties. *See* Tenn. Code Ann. § 36-5-121(i).

have to deplete her resources in order to pay them. *See Fickle*, 287 S.W.3d at 737; *see also Harwell*, 612 S.W.2d at 185.

Additionally, the record indicates that Husband was awarded approximately 59% of the marital assets in the divorce and, as discussed above, was also responsible for dissipating approximately $700,000 worth of marital assets. These factors also support the trial court's decision to award Wife attorney's fees as alimony in solido. *See* Tenn. Code Ann. § 36-5-121(i).

For the reasons stated above, the trial court did not abuse its discretion by ordering Husband to pay his wife's attorney fees.

### VI. ATTORNEY'S FEES INCURRED ON APPEAL

Wife seeks to recover the attorney's fees she incurred on appeal. Whether to award attorney's fees on appeal is within this court's sole discretion. *Wilson v. Wilson*, No. M2008-02073-COA-R3-CV, 2009 WL 1037943, at *4 (Tenn. Ct. App. April 17, 2009) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). In considering a request for attorney's fees, we examine "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal . . . and any other equitable factor that need be considered." *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003) (citing *Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn. 1962)). After considering these factors, we decline to award Mother her attorney's fees on appeal.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Ernest Charles Kuhlo.

_____
FRANK G. CLEMENT, JR., JUDGE